IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LYNDSEY L. ROSS
    *Plaintiff*,

    v.

TK ELEVATOR CORP. ET AL.,
    *Defendants*.

Civil Action No. ELH-25-883

**MEMORANDUM OPINION**

This negligence case is rooted in an incident that occurred at Sinai Hospital in Baltimore, when an elevator occupied by plaintiff Lyndsey Ross allegedly malfunctioned and suddenly dropped two floors. ECF 10 ("Amended Complaint"), ¶ 7.[1] Ross claims that she was injured as a result. *Id.* ¶¶ 7, 27.

Ross filed suit in the Circuit Court for Baltimore City against defendants TK Elevator Manufacturing, Inc. ("TKEM")[2] and TK Elevator Corporation ("TKEC").[3] ECF 2. Defendants removed the case to federal Court on March 17, 2025, on the basis of diversity jurisdiction. ECF 1. The next day, plaintiff moved to amend her Complaint to add Nidec Motor Corporation ("Nidec" or "NMC") as a defendant. ECF 6. She explained that TKEC and TKEM had "advised" that NMC "was responsible in some way for the upkeep, maintenance, functioning, and

---

[1] Plaintiff filed suit on February 10, 2025. ECF 2. Plaintiff filed the First Amended Complaint on March 18, 2025. ECF 10.

[2] According to Plaintiff, TKEM was formerly known as "Thyssenkrupp Elevator Manufacturing, Inc." ECF 10, ¶ 2 n.1.

[3] According to Plaintiff, TKEC was formerly known as "Thyssenkrupp Elevator Corporation." ECF 10, ¶ 3 n.2.

manufacturing of the elevator at issue in Plaintiff's Complaint." *Id.* at 1.  I granted leave to amend. ECF 9.  The Amended Complaint followed.  ECF 10.

The Amended Complaint asserts one negligence claim against all defendants.  *Id.* ¶¶ 22– 29.  According to Ross, all three defendants "produced, sold, installed, serviced, and otherwise maintained the elevators located in Sinai Hospital . . . ."  *Id.* ¶ 6.  TKEM and TKEC have answered the suit.  ECF 20; ECF 21.  But, Nidec has moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  ECF 35.  The motion is supported by a memorandum of law.  ECF 35-1 (collectively, the "Motion").  In addition, Nidec has submitted the Declaration of its employee, Michael Poon. ECF 35-2 ("Poon Decl.").[4]

Nidec identifies two grounds upon which it claims that dismissal of plaintiff's negligence claim is warranted.  First, Nidec asserts that this Court lacks personal jurisdiction over Nidec, and therefore the suit should be dismissed pursuant to Rule 12(b)(2).  ECF 35-1 at 1–2.  Second, Nidec argues that plaintiff has not adequately stated a negligence claim, and therefore it seeks dismissal pursuant to Rule 12(b)(6).  *Id.* at 2.

Plaintiff filed an "Answer" to the Motion (ECF 42), supported by a legal memorandum. ECF 42-1 (collectively, the "Opposition").  Ross maintains that she has established personal jurisdiction over Nidec.  ECF 42-1 at 5.  Moreover, she contends that the Amended Complaint satisfies Rule 12(b)(6).  *Id.* at 6.  But, if the Court disagrees, she asks the Court to "grant leave to amend her Complaint, and/or dismiss any such claims" against Nidec "*without* prejudice as justice would serve and require."  *Id.* at 9 (emphasis in original).

---

[4] Curiously, the Declaration fails to specify Poon's position at NMC or the basis for his knowledge.  Nor does he expressly deny that Nidec had any involvement with the elevator.  These are glaring omissions.  Yet, plaintiff does not contest the Declaration on this basis.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion pursuant to both Rule 12(b)(2) and 12(b)(6), with leave to amend.

## I.    Factual Background[5]

On March 18, 2022, Ross, an employee of Sinai Hospital in Baltimore ("Sinai" or the "Hospital"), was allegedly injured while using an elevator at the Hospital.  ECF 10, ¶¶ 6, 7, 10. During plaintiff's lunch break, she entered "Elevator 7" on the ground floor of the Hospital, *id.* ¶ 10, with the intention of going to the fifth floor "to potentially meet a co-worker for lunch." *Id.*   While in the elevator, Ross "learned that her friend was not available for lunch." *Id.* ¶ 11. After the elevator arrived at the fifth floor, Ross took the elevator to the fourth floor and left the elevator "briefly." *Id.* ¶ 12.  Then, plaintiff reentered the elevator and "pressed" the "level '3' button." *Id.* ¶ 13.   But, rather than going from the fourth floor to the third, the elevator "began going up." *Id.*   Then, "[t]he elevator suddenly dropped what felt like several feet but then continued to go up." *Id.*   Subsequently, "the elevator dropped substantially, sending Plaintiff airborne within the elevator and landing violently back on the elevator ground when the elevator stopped." *Id.* ¶ 14.  The "'4'" button in the elevator flashed quickly "on and off three (3) different times within a short period of time." *Id.* ¶ 15.  In total, the elevator dropped two floors.  *Id.* ¶ 7.

Plaintiff was "highly distraught[.]"  *Id.* ¶ 16.  Ross sat on the floor of the elevator and "called maintenance through the elevator intercom" but her "call was lost."  *Id.*  "Quite some time" later, the elevator door "had to be pried open while the elevator was stuck in between floors of the building." *Id.* ¶ 17.  After "some hours" passed, the elevator "door was manually shut, the elevator seemed to be manually lifted" to the fourth floor, and "the doors were again pried open[.]"

---

[5] As discussed, *infra,* at this juncture I must assume the truth of the facts alleged in the suit. *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019).  Therefore, the factual summary derives from plaintiff's Amended Complaint.  ECF 10.

*Id.* ¶ 18.  Several maintenance personnel "retrieved" plaintiff from the elevator on the fourth floor. *Id.* ¶ 19.

Ross claims that she suffered substantial and permanent injuries because of the occurrence. *Id.* ¶ 7.  Specifically, Ross alleges that she suffered "temporary and permanent bodily injury, great physical pain and mental anguish, severe and substantial emotional distress, and loss of the capacity for the full enjoyment of life and daily activities."  *Id.* ¶ 27(a).  Additionally, Ross maintains that she "is and will be required to undergo medical treatment" to address her injuries, causing her to incur medical costs.  *Id.*(b).  Plaintiff also claims that, since the incident, she has not been able to "engag[e] in normal everyday activities and pursuits" and has lost the "ability to earn money or any viable source of income and of actual earnings[.]"  *Id.*(c).  Notably, Ross fails to identify any specific injury, such as a broken bone.  Nor does she describe any treatment that she has received or requires.

As indicated, plaintiff alleges that the three corporate defendants are "the entities, and or/entity, who produced, sold, installed, serviced, and otherwise maintained the elevators" at the Hospital.  *Id.* ¶ 6; *see id.* ¶ 25.  According to plaintiff, TKEM and TKEC offer "elevator products and services" and Nidec offers "elevator engineering, manufacturing, and upkeep of products and services[.]"  *Id.* ¶¶ 2–4.  Plaintiff claims that TKEM, TKEC, and Nidec are all "authorized and licensed to do business in" Maryland, although Maryland is not the principal place of business for any of the defendants.  *Id.* ¶¶ 2–4.[6]  According to plaintiff, Nidec also "encompasses Motion Control Engineering, and international partner Nidec Kinetek Elevator Technology."  *Id.* ¶ 5.

---

[6] TKEM's principal place of business is located in Tennessee.  ECF 10, ¶ 2.  TKEC's principal place of business is located in Mississippi.  *Id.* ¶ 3.  Nidec's principal place of business is located in Missouri.  *Id.* ¶ 4.

Plaintiff claims that "Defendants' failure to properly install, service, and/or maintain the elevator" at Sinai led to her "substantial injuries[.]" *Id.* ¶ 7. Further, she asserts that defendants' "careless, negligent, grossly careless, and/or reckless" conduct caused the elevator to malfunction. *Id.* ¶ 23. Specifically, plaintiff claims that defendants' conduct consisted of the following, *id.*:

    a. Failing to properly supervise the areas in question so as to furnish to the Plaintiff a safe elevator free from hazards which were recognized or should have been recognized by Defendants as causing or likely to cause the serious physical harm to the Plaintiff and others;

    b. Failing to maintain the elevator in a safe condition to ensure that the Plaintiff would not be injured and which were known and should have been known to the Defendants;

    c. Failing to properly install the elevator and its components;

    d. Failure to follow proper procedures for elevator maintenance;

    e. Failing to perform maintenance services with reasonable care;

    f. Failing to properly inspect the elevator;

    g. Failing to timely inspect the elevator;

    h. Failing to identify, address, and/or repair any potential problems, hazards, or errors during inspections;

    i. Failing to identify, address, and/or repair any potential problems, hazards, or errors in a timely manner;

    j. Failing to maintain the elevator in good and safe condition for the Plaintiff and others;

    k. Failing otherwise to comply with the applicable laws and regulations of the State of Maryland and the applicable Federal laws and regulations;

    l. Failure to notify or warn Plaintiff of elevator issues;

    m. Otherwise failing to exercise the degree of care required under the circumstances; and

    n. Otherwise, being negligent.

As mentioned, Nidec contends that this Court lacks personal jurisdiction as to Nidec. *See* ECF 35. Nidec's employee, Michael Poon, declares, in part, ECF 35-2, ¶¶ 4–9:

> 4. NMC is not incorporated in the State of Maryland, nor is its principal place of business in the State of Maryland.
>
> 5. NMC is a corporation organized and existing under the laws of the State of Delaware.
>
> 6. NMC's principal place of business [is] located at 8050 W. Florissant Ave., St. Louis, Missouri 63136.
>
> 7. NMC has no physical presence in the State of Maryland. It does not:
>
>> a) Own real property in Maryland;
>>
>> b) Maintain business offices or employ personnel in Maryland;
>>
>> c) Operate mailboxes or telephone listings in Maryland; or
>>
>> d) Hold bank accounts in Maryland.
>
> 8. NMC does not maintain manufacturing or design facilities in the State of Maryland.
>
> 9. NMC has not facilitated any interactions with or conducted any business with Lyndsey L. Ross anywhere in the United States, including in the State of Maryland.

In the Declaration, Poon does not specify his position or role at Nidec, or the basis for his knowledge. Moreover, although Poon asserts that NMC has not "conducted any business" with Ross, he never addresses whether Nidec had or has any responsibility with respect to elevators at the Hospital.

Plaintiff counters that her allegations against Nidec "were based on the information, belief, and specific notice given to Plaintiff by Co-Defendant, TK Elevator Corporation." ECF 42-1 at

- 6 -

4.[7]  According to plaintiff, TKEC advised her that "Defendant, Nidec subsidiaries, was the company responsible for the CERN Part of the elevator, known in layman's terms as the 'elevator brain'." *Id.*  Based on this information, plaintiff claims that "it is unequivocally known that Defendant, Nidec, did in fact partake, whether through itself or its subsidiaries in business dealings in the State of Maryland." *Id.* at 5.  Further, plaintiff asserts that "[i]t cannot be disputed that Defendant, Nidec and/or its subsidiaries had some form of contact with the State of Maryland, or otherwise Co-Defendant, TK Elevator Corporation" would not have indicated that Nidec was "allegedly responsible in some way for the Elevator as outlined in Plaintiff's Amended Complaint." *Id.*

Additional facts are included, *infra*.

## II.    Legal Standards

### A.  Personal Jurisdiction

#### 1.

The Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).  The "constitutional touchstone" of personal jurisdiction is that "'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into

---

[7] In plaintiff's motion to amend her Complaint, she stated that both TKEC and TKEM "advised" her that Nidec "was responsible in some way for" the elevator.  ECF 6 at 1.  But, in plaintiff's Opposition, she repeatedly asserts that only TKEC gave her notice that Nidec was responsible for the CERN component of the elevator.  *See* ECF 42-1 at 4–7.

court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Ross asserts only specific jurisdiction.  ECF 42-1 at 5.

Specific jurisdiction exists where the suit arises out of or relates to the defendant's "'contacts with the forum.'" *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted). The Supreme Court has said: "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Ford Motor Co. v. Montana Eighth Judicial Court*, 592 U.S. 351, 359 (2021) (citation omitted); *see Burger King*, 471 U.S. at 472–73 (Specific jurisdiction may be established over a defendant who "has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities.") (citation omitted) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S. at 262 (alterations in original) (quoting *Goodyear*, 564 U.S. at 919).

Moreover, the "contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 592 U.S. at 359 (citation omitted).  In other words, the contacts must "show that the defendant deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there."

*Id.* (citations omitted; alterations in *Ford Motor Co.*); *see Walden v. Fiore*, 571 U.S. 277, 285 (2014).  And, as stated, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."  *Burger King Corp.,* 471 U.S. at 475.

"For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919); *see Ford Motor Co.*, 592 U.S. at 359–60.  However, the Supreme Court has rejected a "causation-only approach . . . ."  *Ford Motor Co.*, 592 U. S. at 361. Specific personal jurisdiction may be established without "a causal showing," so long as there is a "strong 'relationship among the defendant, the forum, and the litigation' . . . ."  *Id.* at 353, 362.

In contrast to specific jurisdiction, "[a] court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers*, 582 U.S. at 262 (emphasis in original) (citing *Goodyear*, 564 U.S. at 919). However, in *Daimler AG*, 571 U.S. at 137, the Supreme Court made clear that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."   In particular, as to "'an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'"  *Id.* (quoting *Goodyear*, 564 U.S. at 924); *see Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131–32 (4th Cir. 2020) ("General jurisdiction may be exercised when the defendant has contacts with the forum jurisdiction that are 'so constant and pervasive as to render it essentially at home in the forum State.'") (quoting *Daimler AG,* 571 U.S. at 122).  "[T]he paradigm forums where corporations are fairly regarded as at home are the forums where it is

incorporated and where it has its principal place of business." *Fidrych*, 952 F.3d at 132; *see Phillips v. British Airways*, 743 F. Supp. 3d 702, 708 (D. Md. 2024).

**2.**

A defendant may challenge personal jurisdiction pursuant to Rule 12(b)(2). It provides: "[A] party may assert the following defenses by motion . . . lack of personal jurisdiction[.]" A challenge pursuant to Rule 12(b)(2) "raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Under Rule 12(b)(2), a defendant "must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Id.*; *see UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268. "If the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In its discretion, a court may permit discovery as to the jurisdictional issue. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993). However, neither discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2). *See generally* 4A Wright & A. Miller, Federal Practice & Procedure § 1351 (4d ed. 2019).

"When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019); *see Mobilization Funding, LLC v. Stokes*, 163 F.4th 55, 61 (4th Cir. 2025) ("When personal

jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, we ask whether the party asserting jurisdiction . . . has met its burden of establishing a prima facie case of jurisdiction."); *OSRX, Inc. v. Anderson*, 2025 WL 1430648, at *6 (4th Cir. May 19, 2025); *Grayson*, 816 F.3d at 268. In that circumstance, "the district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Hawkins*, 935 F.3d at 226; *accord Sneha Media & Entm't, LLC. v. Assoc. Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

"This analysis 'resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6),' in that we assess whether the facts put forward by the party asserting jurisdiction, which we accept as true, meet that party's burden to make out the prima facie case." *Mobilization Funding, LLC*, 163 F.4th at 61 (quoting *Hawkins*, 935 F.3d at 226). However, "[u]nlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Hawkins*, 935 F.3d at 226; *see Crabtree v. Aon Ins. Managers (Bermuda) Ltd.*, 2025 WL 943371, at *1 (4th Cir. Mar. 28, 2025) (per curiam); *UMG Recordings, Inc.*, 963 F.3d at 350; *Grayson*, 816 F.3d at 268; *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *Mylan Labs.*, 2 F.3d at 62. In other words, if the court were to "address[ ] the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint," it would be bound to "take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Grayson*, 816 F.3d at 268.

In any event, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'"  *Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2025) (citation omitted); *see dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 131 (4th Cir. 2023); *Grayson*, 816 F.3d at 267; *Combs*, 886 F.2d at 676.

**3.**

Fed. R. Civ. P. 4(k)(1)(A) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state where the district court is located. *Carefirst of Md.*, 334 F.3d at 396.  It is well settled in Maryland that, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment."  *Id.*; *see Clarke Veneers & Plywood, Inc. v. Mentakab Veneer & Plywood, SDN BHD*, 821 F. App'x 243, 244 (4th Cir. 2020); *Phillips*, 743 F. Supp. 3d at 711.

Maryland's long-arm statute is codified at Md. Code (2020 Repl. Vol., 2025 Supp.), § 6-103(b) of the Courts & Judicial Proceedings Article ("C.J."). It authorizes "personal jurisdiction over a person, who directly or by an agent", *id.*:

    (1)  Transacts any business or performs any character of work or service in the State;

    (2)  Contracts to supply goods, food, services, or manufactured products in the State;

    (3)  Causes tortious injury in the State by an act or omission in the State;

    (4)  Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other

persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

C.J. § 6–103(a) is also pertinent.  It provides: "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section."

Maryland courts have "consistently held that the purview of [Maryland's] long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)); *see CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 983 A.2d 492, 501 (2009) (stating that the long-arm statute authorizes the exercise of personal jurisdiction "'to the full extent allowable under the Due Process Clause'") (citation omitted); *see also Pinner v. Pinner*, 467 Md. 463, 479, 225 A.3d 433, 443 (2020); *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *Haw v. Nat'l Collegiate Athletic Ass'n*, 260 Md. App. 310, 340, 309 A.3d 64, 82 (2024); *Worsham v. Oriental Trading Co., Inc.*, No. 218, Sept. Term, 2023, 2024 WL 937360, at *7 (App. Ct. of Md. Mar. 5, 2024).

When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland high court. *See Snyder v. Hampton Indus., Inc.,* 521 F.Supp. 130, 135 (D. Md. 1981), *aff'd,* 758 F.2d 649 (4th Cir.1985); *accord Mylan Labs.,* 2 F.3d at 61. Although the long-arm and constitutional due process requirements are distinct, they can be

evaluated in tandem. The Maryland Court of Appeals[8] has "consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution, our statutory inquiry merges with our constitutional examination." *Beyond Systems, Inc.,* 388 Md. at 15, 878 A.2d at 576 (citing *Mohamed v. Michael,* 279 Md. 653, 657, 370 A.2d 551, 553 (1977)); *see Pinner,* 467 Md. at 479, 225 A.3d at 443 ("It is therefore necessary to interpret the [Maryland long arm] statute within the confines of the constitutional limitations, rendering an interpretation consistent with those limitations."); *Haw,* 260 Md. App. at 340, 340, 309 A.3d at 82; *Dominion Mech. Contractors, Inc. v. E.C. Ernst, Inc.,* No. 236, Sept. Term, 2021, 2022 WL 873313, at *8 (Md. Ct. Spec. App. Mar. 24, 2022).

Notably, "the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause [so] the statutory inquiry necessarily merges with the constitutional inquiry[.]" *Stover v. O'Connell Assocs., Inc.,* 84 F.3d 132, 135–36 (4th Cir.1996); *accord ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707, 710 (4th Cir. 2002). In other words, "the two inquiries essentially become one." *Stover,* 84 F.3d at 136.

To be sure, "the reach of the [long-arm] statute is as far as due process permits . . ." *Mackey v. Compass Marketing, Inc.,* 391 Md. 117, 141 n. 5, 892 A.2d 479, 493 n. 5 (2006). However, the Maryland Court of Appeals has clarified that the statutory analysis remains a requirement of the

---

[8] In the Maryland general election held in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland. And, the voters also approved a change in the name of the State's intermediate appellate court, from the Maryland Court of Special Appeals to the Appellate Court of Maryland. These changes went into effect on December 14, 2022. *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022), https://perma.cc/TL89-QFKR. But, I shall refer to the courts by the names that were in effect when the cited decisions were issued.

personal jurisdiction analysis.  In *Mackey,* the Maryland Court of Appeals said, 391 Md. at 141 n.

6, 892 A.2d at 493 n. 6 (citations omitted):

> We stated recently . . . that "the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." We did not, of course, mean by this that it is now permissible to simply dispense with analysis under the long-arm statute . . . . Rather . . . we interpret the long-arm statute to the limits permitted by the Due Process Clause when we can do so consistently with the canons of statutory construction.

Since *Mackey,* the Maryland Court of Appeals has repeatedly affirmed that "determining

whether a Maryland court may exercise personal jurisdiction over a foreign defendant requires a

two-step analysis." *Bond,* 391 Md. at 721, 895 A.2d at 999; *see CSR, Ltd.,* 411 Md. at 472, 983

A.2d at 501 (stating that personal jurisdiction analysis "entails dual considerations"). "First, we

consider whether the requirements of Maryland's long-arm statute are satisfied." *CSR, Ltd.,* 411

Md. at 472, 983 A.2d at 501 (citing *Bond,* 391 Md. at 721, 895 A.2d at 999; *Mackey,* 391 Md. at

129, 892 A.2d at 486; *Beyond,* 388 Md. at 14, 878 A.2d at 576).  "Second, we consider whether

the exercise of personal jurisdiction comports with the requirements imposed by the Due Process

Clause of the Fourteenth Amendment." *CSR, Ltd.,* 411 Md. at 47, 983 A.2d at 501 (citing *Bond,*

391 Md. at 721, 895 A.2d at 999; *Beyond,* 388 Md. at 15, 878 A.2d at 575); *see Larue v. Chase,*

DLB-25-225, 2025 WL 3703618, at *3 (D. Md. Dec. 22, 2025) ("[C]ourts cannot combine their

analyses of the long-arm statute and the Due Process Clause . . . . After an analysis of the long-

arm statute, courts then analyze whether the exercise of personal jurisdiction over a nonresident

defendant accords with due process."); *Tsai v. Inspire, Inc.*, TDC-25-1774, 2025 WL 3264127, at

*3 (D. Md. Nov. 24, 2025) ("[T]he jurisdictional analysis under the [Maryland] long-arm statute

does not necessarily collapse into the due process analysis."); *see also MuniCap, Inc. v. Wilson*,

SAG-24-1274, 2025 WL 3237421, at *4 (D. Md. Nov. 20, 2025).

**B.  Fed. R. Civ. P. 12(b)(6)**

**1.**

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).

The "court's role under Rule 12(b)(6) is to evaluate the sufficiency of a complaint . . . ." *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024).  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see Brown-Hyatt v. Brenner*, SAG-25-1737, 2025 WL 2855769, at *2 (D. Md. Oct. 8, 2025) (same).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see Ashcroft v.*

*Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'"); *Johnson v. Baltimore City, Maryland*, __ F.th __, 2026 WL 31776, at *3 (4th Cir. Jan. 6, 2026); *Harmon v. Coleman Worldwide Moving, LLC*, 2025 WL 3764220, at *1 (4th Cir. Dec. 30, 2025) (per curiam); *Seabrook v. Driscoll*, 148 F.4th 264, 269 (4th Cir. 2025); *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025); *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021); *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317–18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). A plausible claim is more than merely conceivable or speculative. *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Bermeo v. Andis*, 163 F.4th 87, 93 (4th Cir. 2025)*; Hebb v. City of Asheville, N. Carolina,* 145 F.4th 421, 432 (4th Cir. 2025); *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S.

- 17 -

265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010). Nor does the court accept "'legal conclusions couched as facts . . . .'" *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citation omitted).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022); *see Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021).

A plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678; *see Katti v. Arden*, 161 F.4th 217, 224 (4th Cir. 2025) (same).

Instead, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

Ordinarily, when ruling on a Rule 12(b)(6) motion, a court does not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023); *Bing v. Brio Sys.*, LLC, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250); *see L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448); *see Goines*, 822 F.3d at 166 (citation omitted) (a court may properly consider documents that are "explicitly incorporated into the complaint by reference . . . and those attached to the complaint as

- 19 -

exhibits"); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  Under limited circumstances, however, a court may consider documents beyond the complaint, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."  *Goines*, 822 F.3d at 166 (citations omitted); *see also Finn v. Humane Soc'y of the United States*, 160 F.4th 92, 96 n.2 (4th Cir. 2025); *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied sub nom.*, *City of Greensboro v. BNT Ad Agency, LLC*, 583 U.S. 1044 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012); *Carrington Sturgis v. Warden Jeff Nines*, SAG-25-841, 2025 WL 3240039, at *2 (D. Md. Nov. 20, 2025); *Kristen Moody v. The Board of Education Of Wicomico County, Defendant.*, SAG-25-00642, 2025 WL 3119201, at *4 (D. Md. Nov. 7, 2025); *Doriety*, 2024 WL 3558754, at *6. To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original)

(citation omitted); *see also Brentzel v. Fairfax Transfer and Storage, Inc.,* 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021) (per curiam).

In the usual course, the "exhibit-prevails rule" applies; it "provides that 'in the event of [a] conflict between the bare allegations of the complaint and any exhibit attached . . . the exhibit prevails.'" *Goines*, 822 F.3d at 166 (citing *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).  However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the [party] attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

"[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc.*, 551 U.S. at 322; *Katyle*, 637 F.3d at 466; *Philips*, 572 F.3d at 180.  However, under Fed. R. Evid. 201, a court may only take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) [] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

In addition, a court "may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown*

*v. Ocwen Loan Servicing, LLC*, PJM 14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016).  And, the Fourth Circuit has stated that a district court may take "judicial notice of its own records."  *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990); *see also Thurman v. Robinson*, 51 F.3d 268, 1995 WL 133350, at *2 (4th Cir. Mar. 28, 1995) (per curiam); *United States Fidelity & Guar. Co. v. Lawrenson,* 334 F.2d 464, 467 (4th Cir. 1964).

It is well settled that a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of opposition briefing.  *See, e.g.*, *Henderson v. City of Roanoke*, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("[N]o litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'") (quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not included in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

## 2.

In tort actions, Maryland adheres to the rule of *lex loci delicti*, meaning it applies the substantive law of the state where the wrong occurred.  *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 604, 606 (D. Md. 2008) (citing *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 619, 925 A.2d 636, 648–49 (2007)) (other citations omitted); *see also DiFederico v. Marriott Int'l,*

*Inc.*, 677 Fed. App'x 830, 833 (4th Cir. 2017).  Because plaintiff's claim is premised on events that occurred in Maryland, the law of Maryland applies.

In general, to assert a claim of negligence in Maryland, the plaintiff must allege the following elements: "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of that duty." *Steamfitters Loc. Union No. 602 v. Erie Ins. Exch. No. 40*, 469 Md. 704, 727, 233 A.3d 59, 72 (2020); *see Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 611, 155 A.3d 445, 451 (2017); *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212–13, 60 A.3d 1, 10 (2013); *Schultz v. Bank of Am.*, N.A., 413 Md. 15, 27, 990 A.2d 1078, 1086 (2010); *Jacques v. First Nat. Bank of Md.*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986)).

### III.    Discussion

### A.  Maryland's Long-Arm Statute

To establish personal jurisdiction, the plaintiff must "first . . . identify a specific Maryland statutory provision authorizing jurisdiction." *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001).  Ross invokes C.J. § 6–103(b)(3), which permits the exercise of personal jurisdiction "over a person, who directly or by an agent . . . [c]auses tortious injury in the State by an act or omission in the State[.]"  *Id.*  Plaintiff contends that the exercise of specific personal jurisdiction over Nidec satisfies the statutory requirements. ECF 42-1 at 3, 5.

"Courts have held that [C.J. § 6-103(b)(3)] requires that both the tortious injury and the tortious act must have occurred in Maryland." *Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 (D. Md. 2006); *see Aphena Pharma Sols.-Maryland LLC v. BioZone Lab'ys, Inc.*, 912 F. Supp. 2d 309, 317 (D. Md. 2012) ("Subsection (b)(3) thus requires injury and act in Maryland[.]").  A plaintiff can satisfy "[t]his requirement . . . through a complaint or in opposition to a Rule 12(b)(2) motion."

*Nat'l Fire & Marine Ins. Co. v. Advanced Lighting Techs. LLC*, JRR-22-02723, 2023 WL 6147563, at *4 (D. Md. Sept. 20, 2023).

It is undisputed that the alleged tortious injury occurred in Maryland. The question is whether Nidec committed any tortious conduct in Maryland.

Plaintiff does not specify a particular act or omission of Nidec. But, plaintiff contends that Nidec caused Ross's injury in Maryland because "Nidec subsidiaries, was the company responsible for the CERN Part of the Elevator, known in layman's terms as the 'elevator brain'." ECF 42-1 at 4. Therefore, plaintiff claims that, under C.J. § 6–103(b)(3), this Court has personal jurisdiction over Nidec. *Id.* at 3.

Ross concedes that she "cannot provide all needed evidence to support the allegations that Nidec, along with Co-Defendant TK Elevator Corporation, produced, sold, installed, serviced, oversaw, and/or maintained the elevator at Siani [sic] Hospital[.]" ECF 42-1 at 4; *see* ECF 16, ¶ 6. Instead, plaintiff relies on TKEC's representation that "Nidec subsidiaries" were "responsible for the CERN Part of the Elevator[.]" *Id.* And, because discovery has not yet commenced, Ross argues that "the information" provided by TKEC "must be found sufficient enough to hold the allegations as properly pled at this early juncture." ECF 42-1 at 6. Furthermore, plaintiff asserts that Nidec is "authorized and licensed to do business in the State of Maryland, offering elevator engineering, manufacturing, and upkeep of products and services[.]" ECF 16, ¶ 4.

Nidec argues that plaintiff's allegations "fail to specify, which, if any, of NMC's contacts relate to the subject elevator" or "allege a clear relation between NMC's actions, the State of Maryland, and Plaintiff's alleged injuries[.]" ECF 35-1 at 8. In addition, Nidec complains that Ross "provides no identifying details about the subject elevator–such as its serial number or specific location within Sinai Hospital–that would enable NMC . . . to determine NMC's

connection, if any, to the Elevator." *Id.* According to Nidec, "[o]n the face of the Amended Complaint, there exists no connection between Maryland, NMC, and Plaintiff or her injuries." *Id.* at 9. Moreover, Nidec contends that plaintiff cannot establish specific jurisdiction on the basis of a hearsay statement made by a codefendant. ECF 44 at 2.

Poon avers in his Declaration (ECF 35-2) that Nidec "has no physical presence in the State of Maryland." *Id.* at ¶ 7. Nor does Nidec "maintain manufacturing or design facilities in the State of Maryland", and it "has not facilitated any interactions with or conducted any business with" Ross. *Id.* ¶¶ 8, 9. Furthermore, Poon avers, *id.* ¶ 7, that NMC does not:

> (a) Own real property in Maryland; (b) Maintain business offices or employ personnel in Maryland; (c) Operate mailboxes or telephone listings in Maryland; or (d) Hold bank accounts in Maryland.

Despite Poon's failure to identify his position at Nidec, or to explain the basis of his knowledge, as well as his failure to address whether Nidec had any role in regard to the elevators at Sinai, plaintiff does not assert that these are flaws in the Declaration.[9] Plaintiff, who bears the burden on this issue, has summarily alleged that Nidec "produced, sold, installed, serviced, and otherwise maintained the elevators" at Sinai. *See* ECF 10, ¶ 6. But, she provides no facts to support the assertions. In her Opposition, Ross summarily claims that "Nidec was responsible for

---

[9] The Supreme Court has explained: "In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. at 375 (2020). "[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). The "courts 'call balls and strikes'; they don't get a turn at bat." *Clark v. Sweeney*, 607 U.S. __, 146 S.Ct. 410, 412 (2025) (per curiam); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (Describing how in the context of pro se plaintiffs, "[w]e will not . . . require the district courts to anticipate all arguments that clever counsel may present in some appellate future. To do so . . . would . . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.").

Here, plaintiff has failed to raise any objection to Poon's Declaration. The Court will not step into plaintiff's shoes to do so.

or otherwise supplied the CERN part of the Elevator[.]" ECF 42-1 at 4.  In my view, plaintiff has

not satisfied C.J. § 6-103(b)(3).

Even assuming, *arguendo*, that the allegations are sufficient to satisfy C.J. § 6-103(b)(3),

this does not end the inquiry.  I must also consider the issue of due process.

### B. Due Process

The Court must determine whether the exercise of specific personal jurisdiction over Nidec

comports with constitutional Due Process.  As discussed, although the Maryland long arm statute

"authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause

. . . the jurisdictional analysis under the long-arm statute does not necessarily collapse into the due

process analysis." *Tsai*, 2025 WL 3264127, at *3.

Courts have separated the due process analysis into individual "prongs." *ALS Scan, Inc.*,

293 F.3d at 712.  First, a court must ascertain whether the threshold of "minimum contacts" is met

Then, the court considers whether the exercise of jurisdiction on the basis of those contacts is

"constitutionally reasonable." *Id.*

The Fourth Circuit has formulated a three-part test to determine whether a court has

specific jurisdiction over a defendant, as follows: "'(1) the extent to which the defendant

purposefully availed itself of the privilege of conducting activities in the State; (2) whether the

plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of

personal jurisdiction would be constitutionally reasonable.'" *Consulting Eng'rs*, 561 F.3d at 278

(quoting *ALS Scan*, 293 F.3d at 712); *accord Sneha Media & Entm't*, 911 F.3d at 198; *see*

*Mobilization Funding, LLC,* 163 F.4th at 61; *CP #1109, LLC v. Continental Motors, Inc.*, 2021

WL 4316029, at *2 (4th Cir. Sept. 23, 2021) (per curiam); *Perdue Foods, LLC v. BRF, S.A.*, 814

F.3d 185, 188 (4th Cir. 2016); *Carefirst*, 334 F.3d at 397.  And, specific jurisdiction is assessed on

a claim-by-claim basis. *See Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F.

Supp. 2d 664, 678 (M.D.N.C. 2011) ("When specific jurisdiction is asserted, jurisdiction must be established for each claim alleged."); *Gatekeeper, Inc. v. Stratech Sys., Ltd.*, 718 F. Supp. 2d 664, 666-68 (E.D. Va. 2010) (discussing the doctrinal basis for this rule); Wright & Miller, § 1069.7 ("[A] plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.").

"The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs,* 561 F.3d at 278. "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp.,* 471 U.S. at 475 (internal citations omitted); *see also ESAB Grp., Inc. v. Zurich Ins. PLC,* 685 F.3d 376, 392 (4th Cir. 2012).

To satisfy the second prong of the test for specific jurisdiction, a defendant's contacts with the forum state must form the basis of the suit. *Consulting Eng'rs,* 561 F.3d at 278–79. The "second prong of the test for specific jurisdiction—the "arises out of" requirement—is a necessary element, not a factor that leaves room for discretion[.]" *Wallace v. Yamaha Motors Corp., U.S.A.*, DCN-19-0730, 2019 WL 6170419, at *3 (D.S.C. Nov. 20, 2019), *aff'd sub nom. Wallace v. Yamaha Motors Corp, U.S.A.*, 19-2459, 2022 WL 61430 (4th Cir. Jan. 6, 2022).

The constitutional reasonableness inquiry permits a defendant "who purposefully has directed his activities at forum residents" to defeat jurisdiction, if the defendant can "present a compelling case that the presence of some other considerations would render jurisdiction unconstitutional." *Burger King,* 471 U.S. at 477. "This prong of the analysis ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in

comparison to his opponent." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.,* 682 F.3d 292, 303 (4th Cir.2012) (quoting *CFA Inst. v. Institute of Chartered Financial Analysts of India,* 551 F.3d 285, 296 (4th Cir. 2009)) (internal quotation marks omitted), *cert. denied,* 568 U.S. 1087 (2013).

Nidec claims that the Court lacks specific jurisdiction because Nidec did not purposefully avail itself of Maryland's jurisdiction, and plaintiff has not alleged "a single action or inaction by" Nidec in Maryland "that is sufficiently related to Plaintiff's claims[.]"  ECF 35-1 at 6, 7, 9; *see* ECF 44 at 3 ("[T]he Amended Complaint lacks any factual averment that" Nidec "itself engaged in activities in Maryland connected to the Incident.").  Moreover, Nidec contends that "Plaintiff's allegations fail to establish a causal relationship between her claims and" Nidec's "contacts with Maryland" and "fail to specify which, if any of" Nidec's "contacts relate to the subject elevator[.]" ECF 35-1 at 8.  Nidec also argues that plaintiff fails to provide "identifying details about the subject elevator–such as its serial number or specific location within Sinai Hospital–that would enable" Nidec "to determine" Nidec's "connection, if any, to the Elevator."  *Id.*

In addition, Nidec contends that plaintiff cannot rely on hearsay as the basis for jurisdictional allegations.  *See* ECF 44 at 2–3.  It asserts that "[a] hearsay statement by none other than" Nidec's "co-defendant regarding" Nidec's "involvement with the 'CERN Part' of the elevator does not suffice to support this Court's exercise of specific jurisdiction."  *Id.* at 2.  It posits: "There is not a single case supporting the proposition that jurisdiction attaches based on statements by a co-defendant."  *Id.*

For all these reasons, Nidec argues that  it "would be constitutionally unreasonable" for the Court to exercise personal jurisdiction over NMC, because the Amended Complaint does not allege a "connection between Maryland, NMC, and Plaintiff or her injuries."  *Id.* at 9.  Moreover,

in Nidec's view, it would be "unduly burdensome to require" NMC "to litigate this case in Maryland." *Id.* Nidec also asserts: "Plaintiff's interest in obtaining an efficient resolution of this dispute is outweighed by the interests of Delaware and Missouri in protecting corporations incorporated or based there, especially where . . . the Amended Complaint does not link any specific conduct by NMC to Maryland or Plaintiff." *Id.*

Plaintiff counters that her allegations against Nidec "directly relate[] to" Nidec's "contacts with the forum state." ECF 42-1 at 5. As noted, Ross asserts that TKEC "advised" plaintiff that Nidec "was the company responsible for the CERN Part of the Elevator, known in layman's terms as the 'elevator brain'." *Id.* at 4. Claiming that TKEC shared information that Nidec was "responsible in some way for the Elevator," *id.* at 5, Ross asserts, *id.*: "It cannot be disputed that Defendant, Nidec and/or its subsidiaries had some form of contact with the State of Maryland." According to plaintiff, her allegations against Nidec stem from "reasonable suspicion and trustworthy information provided by" TKEC, "who would be the only party with access to said information at this early juncture." *Id.*

As noted, plaintiff acknowledges that she "cannot provide all needed evidence to support the allegations that Nidec, along with co-defendant TK Elevator Corporation, produced, sold, installed, serviced, oversaw, and/or maintained the elevator at Siani [sic] Hospital[.]" *Id.* at 4. But, she explains that, at this stage in the litigation, "[d]iscovery has not yet been circulated or exchanged, and Plaintiff does not have subpoena power to obtain the needed documents and otherwise evidence to formally prove the allegations made[.]" *Id.* Moreover, she insists that, "at this early juncture," her allegations are "sufficient enough" to be considered "properly pled[.]" *Id.* She adds that, if Nidec "is dismissed from Plaintiff's Complaint, it would not only severely

prejudice Plaintiff, but also Co-Defendant, who may only be partially liable for the injury sustained by Plaintiff." *Id.*[10]

It is true that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." *Maryland Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1251 (4th Cir. 1991). But, this case is not at the summary judgment stage. And, when determining whether plaintiff has made a prima facie case regarding personal jurisdiction, "absent an evidentiary hearing", the Court does "not evaluate the credibility of the statements in affidavits filed on [plaintiff's] behalf or address any questions regarding the ultimate admissibility of evidence, nor [does the court] decide whether [plaintiff] has proved its contentions." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 561 (4th Cir. 2014).

Hearsay "'may be admitted for purposes of determining whether" the court has "personal jurisdiction," but only if the statements bear "'circumstantial indicia of reliability[.]'" *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995) (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1562 (Fed. Cir. 1994)); *but see United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009) (concluding that the district court did not abuse its discretion by declining to review "inadmissable [sic] hearsay" to determine whether it could exercise personal jurisdiction over the defendant). The Court may consider Poon's Declaration (ECF 35-2) to resolve the jurisdictional dispute. *Hawkins*, 935 F.3d at 226. Notably, plaintiff has not provided an affidavit or declaration attesting to the source of information as to Nidec's contact with Maryland. Rather, it is plaintiff's motion to amend (ECF 6 at 1) and her Opposition (ECF 42-1 at 4) that contain such

---

[10] Plaintiff does not address that TKEC could have filed a third party claim against Nidec but failed to do so.

an assertion, without any identification of the particulars as to who at TKEC made the disclosure, when it was made, or the basis of knowledge of the declarant.

Of import, "[t]he appropriateness of exercising personal jurisdiction is a fact specific inquiry and is determined based on the circumstances of each case." *McBride v. Sacks*, FDW-24-00212, 2024 WL 3448467, at *3 (W.D.N.C. July 17, 2024). The bare-bones, conclusory allegation is insufficient to establish personal jurisdiction. *See Murray v. Bierman, Geesing, Ward & Wood, LLC*, RWT-11-1623, 2012 WL 4480679, at *1 (D. Md. Sept. 27, 2012) ("Conclusory statements or bare allegations alone are insufficient to establish personal jurisdiction."); *Holfield v. Power Chem. Co.*, 382 F. Supp. 388, 390 (D. Md. 1974) ("Mere averments of jurisdiction are not enough nor may conclusory, unsupported statements contained in the accompanying affidavits be relied upon to demonstrate jurisdiction.").

The Fourth Circuit's analysis in *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir. 1994), provides guidance. There, the widow of a man who died from lung cancer brought suit, "alleging that the filters in Kent brand cigarettes manufactured by defendants Lorillard, Inc. ["Lorillard"], and Hollingsworth & Vose Co. ["Hollingsworth"] were the cause of her husband's death." *Id.* at 940. Hollingsworth was "a Massachusetts corporation which manufactured the filter material in Massachusetts and shipped it to Lorillard's plants in Kentucky and New Jersey[.]" *Id.* Hollingsworth sought to dismiss plaintiff's suit pursuant to Fed. R. Civ. P. 12(b)(2), claiming that the company "did not have sufficient contacts with the State of Maryland for a Maryland court to assert personal jurisdiction over it." *Id.*

The Court considered the "stream of commerce" theory, enunciated by the Supreme Court in *World-Wide*, 444 U.S. 286. *See Lesnick*, 35 F.3d at 943. In *World-Wide*, 444 U.S. at 297–298, the Supreme Court stated: "The forum State does not exceed its powers under the Due Process

Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Nevertheless,  the Fourth Circuit pointed to other aspects of *World-Wide*, in which the Court relied "upon the fact that defendants, who did not direct any of their activities toward [the forum state], could not have anticipated being subject to the jurisdiction" of the forum state.  *Lesnick,* 35 F.3d at 944.  Therefore, the Fourth Circuit construed *World-Wide* to require "purposeful activity on the part of the defendants to establish a meaningful contact with the forum state."  *Id.*

The Fourth Circuit then turned its analysis to the Supreme Court's decision in  *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102 (1987), in which the Supreme Court sought "to throw additional light on" the language in *World-Wide* "that a mere placement of goods 'in the stream of commerce' subjects a plaintiff to suit in any state where the goods might foreseeably cause injury."  *Lesnick,* 35 F.3d at 944.  Noting that the Supreme Court issued three separate opinions, and none "mustered majority support," *id.*, the Fourth Circuit concluded: "[T]he Supreme Court has not abandoned . . . [t]he touchstone of the minimum contacts analysis . . . that an out-of-state person [must] have engaged in some activity purposefully directed toward the forum state."  *Id.*  at 945.

According to the Fourth Circuit, even "if that initial test is met, a court must still determine whether the exercise of such jurisdiction would offend traditional notions of fair play and substantial justice."  *Id.*  The Court explained, *id.*:

> To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism. Such a rule would subject defendants to judgment in locations based on the activity of third persons and not the deliberate conduct of the defendant, making it impossible for defendants to plan and structure their business contacts and risks.

Hollingsworth "acknowledged that, to the extent that it sold filter material to" the other defendant manufacturer "in Kentucky and New Jersey, it placed the product in commerce, and it did so with knowledge" that the cigarettes "manufactured with its filter material would be sold in Maryland." *Id.* But, the Fourth Circuit concluded that Hollingsworth's conduct did "not rise to the level of establishing jurisdiction because none of the conduct is in any way directed *toward the state of Maryland.*" *Id.* at 946–47 (emphasis in original). Moreover, Hollingsworth "had no presence in Maryland by having any office, agent, or employee there, and it had no customers in Maryland. It was not registered to do business there and directed no marketing effort or other activities toward the state." *Id.* at 946.

Furthermore, the Court observed that "less than one percent" of Hollingsworth's "income has derived from Maryland through" the sale of the other defendant manufacturer's "sale of cigarettes there." *Id.* The Court noted that "[a]ll of the listed contacts between" the two defendant manufacturers "related only to" Hollingsworth's "agreement to supply filters from its plant in Massachusetts to" the other defendant manufacturer "in Kentucky and New Jersey." *Id.* at 947. Although the Court indicated that "the result might be different if" Hollingsworth "changed production to comply with Maryland regulations or if it had set up a customer relations network there," it stated that, "on the record in this case," it could not "discover" any "affirmative action by" Hollingsworth "ris[ing] to the level of purposeful availment." *Id.*

Here, the facts on which plaintiff relies are far weaker than those of the plaintiff in *Lesnick,* 35 F.3d 939. As indicated, plaintiff alleges in the Amended Complaint: "Defendants were contracted or otherwise agreed to perform all such goods, work, and services to ensure the safe operation of the elevator, and failed to identify, address, or otherwise repair any such issues which led to the elevator's malfunction and the Plaintiff's injuries." ECF 10, ¶ 21. In addition, in seeking

leave to amend the Complaint, Ross claimed that an unnamed representative of TKEC or TKEM, co-defendants, advised that Nidec was in some way responsible for the elevator.  ECF 6 at 1.

There is no clarification as to what this assertion actually means.  For example, does the responsibility for the CERN consist of manufacturing it and, if so, where?  Does it involve maintenance or servicing of the elevator in some way and, if so, does that occur in Maryland?  Did Nidec sell the CERN to a codefendant or to a third party?  Was Nidec involved in the elevator's installation?

In short, there is no indication that Nidec actually performs any work in Maryland, or even that it delivers products to Maryland.  In other words, plaintiff has failed to allege how, in particular, Nidec engaged in purposeful availment.  And, it is plaintiff's burden to show that this Court has personal jurisdiction over the defendant.  *Grayson*, 816 F.3d at 267.

As alleged by Ross, the most specific connection between Nidec and Maryland is that Nidec is "duly authorized and licensed to do business in the State of Maryland[.]"  ECF 10, ¶ 4. However, a party's registration to do business, standing "alone is insufficient to establish specific jurisdiction absent other factors demonstrating that [the party] purposely availed itself of the forum."  *Tradepoint Atl., LLC v. Env't Liab. Transfer, Inc.*, GLR-21-1238, 2022 WL 4564633, at *8 (D. Md. Sept. 29, 2022).

In her Complaint, plaintiff also asserts that Nidec "encompasses Motion Control Engineering, and international partner Nidec Kinetek Elevator Technology", both of which are presumably corporate subsidiaries of Nidec.  ECF 10, ¶ 5.  A corporation "can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler*, 571 U.S. at 135 n.13.

However, to assert jurisdiction over a parent company based on the conduct of a corporate subsidiary, the court must find circumstances warranting it to pierce the corporate veil. Maryland "has adopted the so-called 'agency' test in deciding whether to pierce the veil separating parent corporations from their subsidiaries for jurisdictional purposes." *Mylan Labs.,* 2 F.3d at 61. Thus, in Maryland, the determination of agency and test for piercing the corporate veil are essentially the same. *Id.* at 63. The court may attribute the subsidiary's actions to the parent "if the parent exerts considerable control over the activities of the subsidiary." *Mylan Labs.,* 2 F.3d at 61. The central inquiry in this regard is "whether significant decisions of the subsidiary must be approved by the parent," but the court also examines factors such as whether the parent and subsidiary keep separate books and records, use separate accounting procedures, and hold separate directors' meetings. *Id.* The court also looks to see if there is an independent reason for the existence of the company; that is, it must not be fraudulently incorporated or undercapitalized. *See id.; cf. In re American Honda Motor Co., Inc.,* 941 F.Supp. 528, 552 (D.Md.1996).

Nidec asserts: "Plaintiff has not attempted to offer an iota of evidence as to how" NMC exercised control over the activities of its unnamed subsidiaries, such that specific jurisdiction would be appropriate." ECF 44 at 3–4. Indeed, Ross never identifies which subsidiary was allegedly responsible for the CERN and, alternatively, appears to allege that the parent company, Nidec, could be responsible. *See* ECF 42-1 at 5 (claiming that "Nidec, did in fact partake, whether through itself or its subsidiaries, in business dealings in the State of Maryland").

This Court declines to exercise personal jurisdiction over Nidec based on such little information. It is impossible to determine from the allegations what, if any control, Nidec has over these subsidiaries.

In my view, plaintiff has failed to establish a prima facie basis for the exercise of specific personal jurisdiction as to Nidec.  Therefore, I shall grant defendant's Motion, pursuant to Rule 12(b)(2), with leave to amend.

### C.  Fed. R. Civ. P. 12(b)(6)

Alternatively, Nidec urges the Court to dismiss the claim as to Nidec based on Fed. R. Civ. P. 12(b)(6).  ECF 35-1 at 10.  Nidec complains that Ross "fails to assert facts that plausibly state a claim for relief" and does not "provide the defendants with fair notice of her claim and its basis." *Id*.  Indeed, Nidec characterizes plaintiff's allegations as "sweeping conclusory statements[.]" *Id*. at 10–11.

According to Nidec, the Amended Complaint "does not differentiate between the defendants, and does not aver any facts as to what" Nidec "did, when, to whom, and how that conduct breached any identifiable duty to Plaintiff."  *Id*. at 11; *see also* ECF 44 at 4 ("Plaintiff's negligence claim hinges on undifferentiated allegations against" Nidec and TKEC and "fails to specify" Nidec's "role or conduct in Plaintiff's alleged injury.").  In Nidec's view, plaintiff's assertions "impermissibly lump[] the defendants together without specifying what conduct by which defendant caused what injury to Plaintiff."  ECF 35-1 at 11.  Therefore, Nidec contends that this makes it impossible to "apprise" defendants of the claim brought against them, and give them fair notice, as required under Fed. R. Civ. P. 8(a)(2).  *Id*.

Furthermore, Nidec argues that "the sole basis for [plaintiff's] allegations rests on Plaintiff's ill-defined 'notice' she received from TK Elevator Corporation, and is insufficient to cross the line from conceivable to plausible."  ECF 44 at 4.  Nidec asserts that plaintiff's claims that Nidec "produced, sold, installed, serviced, and otherwise maintained the elevators lack any factual support tying" Nidec "to the elevator at issue."  *Id*. (internal quotation marks omitted).

Additionally, Nidec claims that Ross "fails to allege what legal duty was owed to her by NMC, how it was breached, or how the breach proximately caused her injuries." *Id.* at 5. Moreover, Nidec characterizes plaintiff's description of the "'CERN part of the Elevator' as the 'elevator brain'" as a "conclusory label unsupported by facts detailing" Nidec's "involvement," to which it "cannot reasonably respond . . . ." *Id.* Furthermore, Nidec claims that "discovery" cannot "cure" the deficiencies in plaintiff's Complaint because "a plaintiff cannot rely on hope of uncovering evidence through discovery to survive a motion to dismiss." *Id.* (citing *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 587–88 (4th Cir. 2015)).

Ross urges the Court to deny the Motion, arguing that her "Complaint is adequately pled with sufficiency to put the Defendants on notice of the allegations made against them." ECF 42-1 at 9. She claims that TKEC "gave Notice to Plaintiff that Defendant, Nidec subsidiaries, was the company responsible for the CERN Part of the Elevator, known in layman's terms as the 'elevator brain'." *Id.* at 4. And, plaintiff claims that Nidec "owed her a duty to properly produce, install, service, and maintain the elevator at Sinai Hospital, and . . . breached this duty by failing to ensure the elevator and/or its interior parts' safety." *Id.* at 8. In plaintiff's view, her allegations provide Nidec with "fair notice of the claims against it and the grounds upon which they rest[.]" *Id.* at 9.

In a complaint, the plaintiff must "allege sufficient factual content to permit a reasonable inference that such Defendant engaged in actionable misconduct." *Rhodes v. Mcic, Inc.*, JKB-16-2459, 2017 WL 25375, at *3 (D. Md. Jan. 3, 2017); *see Heym v. APG Hous., LLC*, JRR-23-02092, 2024 WL 2302306, at *3 (D. Md. May 21, 2024). Of course, "'at this early stage in the litigation, a plaintiff will not come to court fully armed with the requisite facts to prove their case,' but the

plaintiff still must allege 'sufficient facts to allow the court to infer liability as to *each* defendant.'" *Heym*, 2024 WL 2302306, at *3 (quoting *Langford v. Joyner*, 62 F.4th 122, 126 (4th Cir. 2023)).

Notably, "'[a] pleading cannot simply 'lump[ ] [Defendants] together in the complaint without sufficient detail,' or further without 'alleging any facts specific to each entity.'" *Iyapo Clinton Jones, Sr., v. Mazda Financial Services et al.*, BAH-25-1090, 2026 WL 91647, at *3 (D. Md. Jan. 13, 2026) (quoting *Heym,* 2025 WL 2302306, at *3) (alternations in original).  When a plaintiff "lump[s] all Defendants together generally" and makes no "effort to allege facts particular to any Defendant", the pleading merits dismissal.  *See Rhodes,* 2017 WL 25375, at *3.

In the Amended Complaint, plaintiff alleges that all defendants engaged in negligent conduct by "failing to properly supervise the areas in question so as to furnish a safe elevator free from hazards"; failing to "maintain the elevator in a safe condition"; failing "to properly install the elevator and its components"; failing "to follow proper procedures for elevator maintenance"; failing "to perform maintenance services with reasonable care"; failing "to properly inspect the elevator"; and failing "to timely inspect the elevator[.]"  ECF 10, ¶ 23.  In addition, plaintiff claims that defendants owed her "a duty to use reasonable and ordinary care to maintain the elevator safely for Plaintiff and others, and to protect Plaintiff and others against injury caused by an unreasonable risk, which Plaintiff by exercising ordinary care, could not have discovered."  *Id.* ¶ 25.  But, as to causation, plaintiff does not identify the acts or omissions of Nidec that caused the accident.  As stated, based on plaintiff's allegations in the Amended Complaint, it is not clear if Nidec's role involved manufacture, installation, inspection, and/or maintenance of the CERN.

Plaintiff complains that "it is impossible to differentiate between Co-Defendant, TK,[11] and Defendant, Nidec" based on "the information available at this early juncture" of the litigation.

---

[11] Presumably, plaintiff is referring to TKEC.

ECF 42-1 at 7. This may explain why the Complaint is devoid of specific allegations as to Nidec. But, it does not excuse the fundamental flaw at the heart of plaintiff's Complaint: her failure to identify the negligent conduct by Nidec that caused her injury.

In sum, plaintiff has failed to plead facts sufficient to support a finding of negligence by Nidec. Therefore, I shall grant Nidec's Motion, pursuant to Fed. R. Civ. P. 12(b)(6), without prejudice and with leave to amend.

### IV.    Conclusion

For the foregoing reasons, I shall grant Nidec's Motion and dismiss plaintiff's claim as to Nidec, without prejudice and with leave to amend, due by **February 24, 2026**.

An Order follows, consistent with this Memorandum Opinion.


Date:  February 4, 2026                                            _____/s/_____

Ellen Lipton Hollander
United States District Judge